IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RESCO PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-127 |
| | ) | |
| INTERNATIONAL UNION OF | ) | |
| BRICKLAYERS AND ALLIED | ) | |
| CRAFTWORKERS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Presently before the Court is Plaintiff's Motion for Summary Judgment (Docket No. 28), Statement of Undisputed Material Facts (Docket No. 29), Memorandum of Law in Support of Motion for Summary Judgment (Docket No. 30), and Proposed Order (Docket No. 32); Defendant's Response in Opposition to Plaintiff's Motion (Docket No. 35) and Responsive Concise Statement of Material Facts (Docket No. 36); Plaintiff's Response to Defendant's Concise Statement of Material Facts (Docket No. 39) and Reply to Defendant's Response in Opposition to Plaintiff's Motion (Docket No. 40); and all attachments to these documents. The Court heard oral argument on Plaintiff's motion on February 18, 2021. (Docket No. 45 (Transcript of Proceedings ("Tr."))).

For the reasons set forth herein, Plaintiff's motion is granted in part and denied in part.

## I. Factual Background[1]

Plaintiff Resco Products, Inc. ("Resco") is a manufacturer of refractory, which is a brick-like material resistant to heat and chemical and mechanical abrasion that is sold for steel-making

---

[1] The relevant facts are derived from the undisputed evidence of record, and the disputed evidence of record is read in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

and other heavy industrial applications.  (Resco's Statement of Undisputed Material Facts ("Resco's SMF"), Docket No. 29, ¶¶ 1, 2; Declaration of Graham McDonough ("McDonough Dec."), Docket No. 28-7, ¶¶ 5, 6).  In addition to manufacturing refractory materials at its nine facilities, Resco provides steel-manufacturing plants with on-site labor to remove old refractory materials and install new materials, which is an ongoing process known as vessel-relining. (Resco's SMF, ¶¶ 3, 13; McDonough Dec., ¶¶ 6, 7, 13).  Resco also performs repair work on coke ovens, a process known as ceramic-welding.  (Resco's SMF, ¶ 14; McDonough Dec., ¶ 14).

Less than 5% of Resco's revenue stems from its vessel-relining and ceramic-welding services.  (Resco's SMF, ¶ 20; McDonough Dec., ¶ 20).  Such service work accounted for 4.4% of Resco's total revenue in 2015, 3.6% in 2016, 3.9% in 2017, 3.5% in 2018, and 3.9% in 2019. (Id.).  Similarly, Resco's vessel-relining and ceramic-welding services since 2015 have never exceeded 4.9% of its annual man hours.  (Resco's SMF, ¶ 21; McDonough Dec., ¶ 21).  The hours worked for Resco's vessel-relining and ceramic-welding services accounted for 4.9% of its total man hours in 2015, 4.8% in 2016, 4.6% in 2017, 4.1% in 2018, and 4.1% in 2019.  (Id.).

Because Resco only performs vessel-relining services for its customers who make it a significant supplier of their refractory products, none of Resco's customers purchase its vessel-relining services without also buying its products.  (Resco's SMF, ¶¶ 15-17; McDonough Dec., ¶¶ 15-17).  In 2019, 5 of Resco's 1,368 customers (0.37%) purchased vessel-relining or ceramic-welding services, while in 2018, the same 5 of Resco's then 809 customers (0.62%) purchased such services.  (Supplemental Declaration of Graham McDonough ("McDonough Supp. Dec."), Docket No. 39-1, ¶¶ 6, 7).  During both 2018 and 2019, only 2 of those 5 customers purchased vessel-relining services, one of which was steelmaker North American Stainless ("NAS").  (Id.).

Resco entered into a service agreement with NAS in January 2014 to provide NAS's Ghent, Kentucky facility ("Ghent") with both refractory materials and vessel-relining services. (Resco's SMF, ¶ 34; McDonough Dec., ¶ 25). Resco's work at NAS's Ghent facility has continued uninterrupted to the present time. (Resco's SMF, ¶ 36; McDonough Dec., ¶ 28). In 2019, the purchase of refractory products accounted for 89% of Resco's revenue from Ghent, while 11% of its revenue there stemmed from vessel-relining services. (McDonough Supp. Dec., ¶ 9).

Of the 22 Resco employees currently performing vessel-relining at Ghent, 6 have worked there since March 2014, and 18 have worked there longer than two years. (Resco's SMF, ¶ 38; McDonough Dec., ¶ 29). These employees have never been hired out of a union hiring hall, have never signed cards showing majority support for a union, and have never voted for, selected, or otherwise designated any union as their exclusive representative for purposes of collective bargaining. (Resco's SMF, ¶¶ 39, 40; McDonough Dec., ¶¶ 30, 31).

In March 2014, Resco entered into a collective bargaining agreement, known as the Bricklayers' National Agreement for Refractory Construction ("NRA"), with Defendant International Union of Bricklayers and Allied Craftworkers (the "BAC" or the "Union"), a labor organization that represents bricklayers, stone and marble masons, and other craftworkers, including workers who perform vessel-relining and ceramic-welding work. (Resco's SMF, ¶¶ 22, 30; McDonough Dec., ¶ 25). The NRA admittedly applies to those of Resco's employees with proven majority support for the Union's exclusive representation pursuant to Section 9(a) of the National Labor Relations Act ("NLRA"), such as its vessel-relining employees working at customer locations in Ohio. (Resco's SMF, ¶¶ 26, 30)

On or about December 18, 2018, the Union initiated a grievance and demanded arbitration pursuant to the NRA claiming that Resco failed to provide wages and benefits to its vessel-relining

employees working at NAS's Ghent facility consistent with what is required by the NRA. (Resco's SMF, ¶ 48; the Union's Concise Statement of Material Facts ("Union's SMF"), ¶ 44; Docket No. 21-6 (Letter dated Jan. 11, 2019, regarding "Request for Arbitration over Grievance with Resco Products, Inc.")). Relatedly, several of the Union's affiliated employee benefit funds asserted ERISA claims against Resco seeking allegedly delinquent benefit contributions for its Ghent employees as purportedly required by the NRA. See Knowles v. Resco Products, Inc., No. 1:19-cv-5035-TWP-MPB (S.D. Ind.) (the "Indiana Litigation"). On January 17, 2019, Resco filed an unfair labor practice charge against the Union (that was later dismissed), in which Resco argued that its Ghent employees are not covered by the NRA. (Union's SMF, ¶ 47).

## II.   **Procedural Background**

On January 27, 2020, Resco filed this action seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), and Sections 301 and 303 of the Labor Management Relations Act, 29 U.S.C. §§ 185, 187 ("LMRA"). In Count I of the Complaint, Resco seeks a declaration by the Court that it has no obligations under the NRA with respect to its employees in Ghent, Kentucky because the NRA does not qualify as a pre-hire agreement that covers work performed by them. (Docket No. 1, ¶¶ 37-45).

In Count II of the Complaint, Resco avers that the Union has acted in violation of Sections 8(b)(1), 8(b)(4)(ii)(A), 8(d), 8(e) and 9(a) of the NLRA, thereby engaging in conduct defined as unfair labor practices under Section 303(a) of the LMRA, 29 U.S.C. § 187(a). (Docket No. 1, ¶¶ 46-52). Resco seeks damages that it has allegedly sustained due to such actions by the Union pursuant to Section 303(b) of the LMRA, 29 U.S.C. § 187(b), including the cost of this lawsuit. (Docket No. 1, ¶ 51).

In response to the Complaint, the Union filed a Counterclaim against Resco under Section 301 of the LMRA, 29 U.S.C. § 185, asking the Court for a judgment declaring that Resco's failure to submit to arbitration constitutes a breach of the NRA, and for an order compelling Resco to arbitrate the Union's grievance involving the Ghent employees, as well as costs and attorney fees. (Docket No. 21, ¶¶ 46-52 (Count I)).

On June 8, 2020, Resco filed a motion for summary judgment in its favor on both of its claims and as to the Union's counterclaim.  (Docket No. 28 at 3, "Wherefore" clause; Docket No. 30 at 20-21).  Specifically, Resco asks for an order declaring that it owes no obligations to the Union or any other party under the NRA as it pertains to Resco's employees at NAS's Ghent facility.  (Resco's Proposed Order, Docket No. 32).  Resco's summary judgment motion is presently before the Court.

### III.    <u>Summary Judgment Standard and Supporting Factual Positions</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).  The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."   Fed. R. Civ. P. 56(c)(1)(A).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original). A disputed fact is material if it might affect the outcome under the substantive law.  <u>See</u> <u>Boyle v. County of Allegheny</u>, 139 F.3d 386, 393 (3d Cir. 1998) (citing <u>Anderson</u>, 477 U.S. at 247-48).

Summary judgment is unwarranted where there is a genuine dispute about a material fact, that is, one where a reasonable jury, based on the evidence presented, could return a verdict for the non-moving party with regard to that issue.  See Anderson, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party without weighing the evidence or questioning the witnesses' credibility.  See Boyle, 139 F.3d at 393.  The movant has the burden of demonstrating the absence of a genuine issue of material fact, while the non-movant must establish the existence of each element for which it bears the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant has pointed to sufficient evidence of record to demonstrate that no genuine issues of fact remain, the burden is on the non-movant to search the record and detail the material controverting the movant's position.  See Schulz v. Celotex Corp., 942 F.2d 204, 210 (3d Cir. 1991).  Rule 56 requires the non-moving party to go beyond the pleadings and show, through the evidence of record, that there is a genuine issue for trial.  See Celotex, 477 U.S. at 324.

Here, Resco supports its motion with two declarations signed by its Vice President of Finance Graham McDonough (Docket Nos. 28-7 and 39-1).  Although the Union denies that many of the facts supported by Mr. McDonough's declarations are undisputed (or material), it does not cite to record evidence to support its denials or otherwise respond in accordance with Local Rule 56.C.1 of the Local Rules of Court for the Western District of Pennsylvania.

Local Rule 56.C.1 specifically requires that the party opposing a motion for summary judgment file a separate concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:

    a.   admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material;

    b.   setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material) with appropriate reference to the record . . .; and

    c.   setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment.

LCvR 56.C.1.

In denying statements of fact based on Mr. McDonough's declarations, the Union called Mr. McDonough's statements "bare assertions" and "conclusory statements," but it frequently did not cite to any record evidence to show the basis for its denials. (Docket No. 36). Additionally, the Union did not reply in any way to Resco's response to its SMF, which cited to Mr. McDonough's attached supplemental declaration. The Union also never sought leave to file a reply to Resco's response to its SMF or to Mr. McDonough's supplemental declaration, nor did it notify the Court of any need to conduct discovery in order to reply to that response or declaration. See Sproull v. Golden Gate Nat'l Senior Care, LLC, No. 2:08-cv-1107, 2010 WL 339858, at *3-4 (W.D. Pa. Jan. 22, 2010) (considering summary judgment filings under Fed. R. Civ. P. 56 and LCvR 56, and declining to strike the moving party's reply documents, but permitting the non-moving party to file a sur-reply thereto). Moreover, at oral argument, the Union made clear that discovery was unnecessary in this matter and that the parties were "pretty much in agreement" as to the material facts. (Tr. at 32).

Additionally, Federal Rule of Civil Procedure 56(c)(4) provides that declarations in support of summary judgment are properly "made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters

stated."  Here, Mr. McDonough declared that his testimony is based on his personal knowledge, the facts to which he testified concern details regarding Resco's financial and employment information which would be admissible in evidence in this matter, and his current position as well as his prior position as Resco's Corporate Controller show that he is competent to testify on the matters addressed in his declarations.  (McDonough Dec., ¶¶ 3-4).  The Union has not come forward with any evidence to show that Mr. McDonough does not satisfy all three requirements. Accordingly, the Court finds that the Rule 56(c)(4) requirements are met with regard to Mr. McDonough's declarations.  Therefore, the Union's characterization of Mr. McDonough's declaration as consisting of "bare assertions" or "conclusory statements," without appropriate reference to the record to support such a claim, is insufficient to form the basis for the Union's denial of facts based on such declarations.

The Union's SMF also indicates that it can neither confirm nor deny whether many facts are undisputed because Resco filed for summary judgment before the parties conducted discovery. (Docket No. 36).  In response to Resco's summary judgment motion, the Union could have shown, by affidavit or declaration pursuant to Federal Rule of Civil Procedure 56(d), that for specified reasons it could not present facts essential to justify its opposition, in which case the Court could have deferred consideration of the motion and allowed time for the parties to take discovery.  The Union, however, made no such request and instead responded with blanket denials that lacked citation to evidence to support such denials.  Moreover, in response to the Court's questioning during oral argument as to whether there are material facts in dispute or whether further discovery is necessary in order for the Court to resolve the issues, counsel for the Union responded, "I don't think so, Your Honor.  I think, with respect to the material facts, we're pretty much in agreement." (Tr. at 32).

The Court may deem facts to be admitted when responsive summary judgment materials have failed to comply with the Local Rules.  See Keith v. Charter Communications, Inc., Civ. No. 1:18-cv-110, 2020 WL 2394997, at *2 (W.D. Pa. May 12, 2020); Marinkovic v. Battaglia, Case Nos. 1:14-cv-49 and 2:18-cv-388, 2019 WL 4600207, at *2 (W.D. Pa. Sept. 23, 2019); Harris v. Astellas Pharmaceuticals, Civ. No. 13-1663, 2015 WL 5638023, at *1 n.1 (W.D. Pa. Sept. 14, 2015); Jankowski v. Demand, Civ. No. 06-618, 2008 WL 1901347, at *1 (W.D. Pa. Apr. 25, 2008).

Here, the Union did not satisfy the Local Rules, as described, supra.  Therefore, in accordance with Local Rule 56, facts based on Mr. McDonough's declarations set forth in Resco's SMF and Resco's response to the Union's SMF will, for the purpose of deciding Resco's motion for summary judgment, be deemed admitted where they are not specifically denied or otherwise controverted by a separate concise statement with appropriate reference to the record as described in the rules.  See LCvR 56.B-56.E; Fed. R. Civ. P. 56(e).

## IV.   Discussion

### A.  The National Labor Relations Act

The National Labor Relations Act, 29 U.S.C. § 151 et seq. ("NLRA" or the "Act"), provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities . . . .

29 U.S.C. § 157.  According to Section 9(a) of the NLRA, representatives designated by "the majority of the employees in a unit appropriate for" collective bargaining "shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining."  29

U.S.C. § 159(a).  Majority support for a labor union can be demonstrated through an election process, see 29 U.S.C. § 159(e), or by a labor union coming forward with signed authorization cards from more than 50 percent of a bargaining unit's employees, in which case an employer can recognize the union voluntarily, see NLRB v. Gissel Packing Co., 395 U.S. 575, 596-97 (1969).  Generally, the NLRA prohibits employers and unions from entering into collective bargaining agreements unless the union is supported by a majority of the relevant bargaining unit's employees.

The NLRA includes an exception to this prescribed process for employers "engaged primarily in the building and construction industry."  See 29 U.S.C. § 158(f).  Under Section 8(f) of the NLRA, it is not an unfair labor practice for such an employer to "make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members."  Id.  These agreements permitted by Section 8(f), which do not require the same demonstration of majority support, are commonly known as "pre-hire agreements."  At issue here is whether Resco is an employer "engaged primarily in the building and construction industry" so that the parties' NRA could be construed as a valid a pre-hire agreement covering Resco's Ghent employees.

**B.  The Declaratory Judgment Act and the Labor Management Relations Act**

**1.  Subject Matter Jurisdiction**

As a preliminary matter, the Court must determine whether it has subject matter jurisdiction over this controversy.  The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).   Because the DJA has only

"procedural effect" and does not create subject matter jurisdiction, "a court must find an independent basis for jurisdiction before it can consider a declaratory judgment action." Mack Trucks, Inc. v. Int'l Union, 856 F.2d 579, 583 n.4 (3d Cir. 1988) (citing Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 351-52 (3d Cir. 1986)).

Here, both Resco and the Union seek relief pursuant to Section 301 of the LMRA,[2] which confers jurisdiction on the federal courts, stating that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185. See Bethlehem Mines Corp. v. United Mine Workers of America, 344 F. Supp. 1161, 1161-62 (W.D. Pa. 1972); see also Textron Lycoming Reciprocating Eng. Div. v. United Auto., Aerospace and Agric. Implement Workers of America, Int'l Union, 523 U.S. 653, 658 (1998) ("[A] declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a Court to declare the agreement invalid."); Joseph W. Davis, Inc. v. Int'l Union of Operating Eng'rs, 636 F. Supp. 2d 403, 410 (E.D. Pa. 2008) (citing Textron and explaining that "[b]efore a district court can exercise § 301 jurisdiction in a declaratory judgment suit, a plaintiff must show that it has been accused of violating the terms of a collective bargaining agreement"); American Sterilizer Co. v. Local Union No. 832, 278 F. Supp. 637, 642 (W.D. Pa. 1968) (noting that the jurisdiction of district courts "over suits arising out of collective bargaining agreements is settled by Section 301 . . . . [and] includes the power to order specific performance of an agreement to arbitrate"). Furthermore, a DJA action brought under Section 301 allows a party accused of breaching an agreement to seek a declaration of its rights and obligations under the agreement without having to wait for the non-breaching party to bring

---

[2] Resco also seeks relief pursuant to Section 303 of the LMRA, which states, "Whoever shall be injured in his business or property by reason [of] any violation of subsection [303(a)] may sue therefor in any district court of the United States . . . and shall recover the damages by him sustained and the cost of the suit." 29 U.S.C. § 187(b).

an action to enforce the agreement.  See <u>Mack Trucks, Inc. v. Int'l Union</u>, 671 F. Supp. 1027, 1032 (E.D. Pa. 1987).  The Court therefore finds that it has jurisdiction over the claims presented here pursuant to Section 301 of the LMRA because Resco has been accused of breaching the NRA.

Although district courts *may* entertain actions for declaratory relief under the DJA, they are not *required* to exercise jurisdiction over such matters.  Rather, the decision whether to exercise jurisdiction under the DJA is within the "sound and reasoned discretion" of the district court, and the Third Circuit has set forth a list of factors that a court may consider in deciding whether to exercise jurisdiction under the DJA, including, but not limited to:

1. the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

2. the convenience of the parties;

3. the public interest in settlement of the uncertainty of obligation;

4. the availability and relative convenience of other remedies;

5. a general policy of restraint when the same issues are pending in a state court;

6. avoidance of duplicative litigation;

7. prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

8. (in the insurance context) an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

<u>Reifer v. Westport Ins. Corp.</u>, 751 F.3d 129, 146 (3d Cir. 2014).

In this case, a declaration by the Court will resolve the uncertainty of Resco's obligations under the NRA, if any, with respect to its employees working at NAS Ghent.  The parties have

made no argument that they are inconvenienced by having this dispute resolved by this Court, nor have they claimed that any other remedy is more available or more convenient than that which the Court can provide.  Additionally, a declaration resolving this controversy serves the public's interest in maintaining stable contractual relations and in promoting labor peace and stability.  The issues involved in this action are not also pending in a state court, nor is there duplicative litigation (rather, the Indiana litigation has been stayed pending the outcome of the Court's ruling in this case).  This action does not present an instance of procedural fencing, and it does not involve a race for *res judicata*.  The Court also takes note of the fact that the LMRA's stated purpose is to promote industrial peace and responsibility and to allow for the development of a consistent body of labor law, and that Section 301 is to be liberally interpreted in order to effectuate these purposes.  See Mack Trucks, Inc., 671 F. Supp. at 1033 (citing Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 454-55 (1957); Local 174, Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962); Smith v. Evening News Ass'n, 371 U.S. 195, 199-200 (1962)).

Beyond these *Reifer* factors, the Union urges the Court to decline exercising jurisdiction because Resco previously and unsuccessfully sought to persuade the Office of the General Counsel for the National Labor Relations Board ("NLRB" or "Board") to prosecute unfair labor practice ("ULP") charges against the Union.  (Docket No. 35 at 17-19).  Also, albeit in a footnote, the Union argues that the Court should not exercise jurisdiction here because the NLRB has already considered and subsequently declined to prosecute Resco's claims which, it asserts, are final and cannot be appealed to the District Court under the *Garmon* preemption doctrine.[3]  (Id. at 17 n.6).

---

[3]      In San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959), the Supreme Court held that when activity is arguably subject to Sections 7 and 8 of the NLRA, the states and the federal courts must defer to the exclusive competence of the NLRA. At oral argument, however, counsel for the Union conceded that the decision by the NLRB's Office of General Counsel suggests "caution" for the Court in deciding whether to exercise jurisdiction here, but it does not involve issue preclusion or *res judicata* that would preclude the Court from deciding this issue independently of the NLRB.  (Tr. at 27).

As noted, <u>supra</u>, in 2019, after the Union filed its grievance regarding Resco's Ghent employees and demanded arbitration pursuant to the NRA, Resco filed ULP charges with Region 9 of the NLRB.  (Union's SMF, ¶ 47).  Similar to its allegations here, Resco's ULP charges asserted that the Union violated the NLRA by unlawfully attempting to act as its Ghent employees' collective bargaining representative and attempting to enforce a pre-hire agreement in relation to those employees, which was prohibited by the NLRA and not excepted by Section 8(f) because Resco is not engaged primarily in the building and construction industry.  (Docket No. 36-1 at 23).  The NLRB's Regional Director declined to issue a complaint to prosecute Resco's ULP charge.  (<u>Id.</u> at 105-06 (Dismissal correspondence from the NLRB, Region 9, dated Apr. 22, 2019)).  The NLRB's Office of the General Counsel subsequently denied Resco's appeal of that dismissal, agreeing with the Regional Director's conclusion that the Union had a reasonable basis for attempting to enforce the NRA with respect to Resco's Ghent employees.  (<u>Id.</u> at 23-24 (Decision from the NLRB Office of the General Counsel, dated Oct. 23, 2019)).

While the Court recognizes the similarity between Resco's claims in this action and the ULP charges it previously filed with the NLRB, the Court finds that Resco is not seeking judicial review of the NLRB's discretionary decision not to prosecute its ULP charges.  Rather, Resco is asking the Court to declare whether a collective bargaining agreement validly applies to certain of its employees, which is a determination for which this Court has independent jurisdiction afforded to it by Section 301 of the LMRA, 29 U.S.C. § 185.  In fact, in <u>Smith v. Evening News Ass'n</u>, 371 U.S. 195, 197 (1962), the Supreme Court explained that other cases before it had involved collective bargaining agreement actions arising under Section 301 of the LMRA, and it had expressly refused to apply the pre-emption doctrine of *Garmon* in such instances:  "[W]e likewise reject that doctrine here where the alleged conduct of the employer, not only arguably, but

concededly, is an unfair labor practice within the jurisdiction of the National Labor Relations Board." Id.  The Supreme Court concluded that, "[t]he authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by [Section] 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under [Section] 301." Id.  Accordingly, the Court finds that it is not preempted from considering Resco's claims by *Garmon*, nor is it necessary for the Court to refrain from considering the claims simply because the NLRB's Office of General Counsel previously chose, in its discretion, to refrain from prosecuting Resco's ULP charges.[4]

Accordingly, upon consideration of all of the above factors, the Court finds it appropriate to exercise its discretionary jurisdiction over the parties' claims here.

## 2. **The Parties' Claims Under Section 301 of the LMRA**

Resco argues that the NRA is not a valid pre-hire agreement applicable to its Ghent employees pursuant to Section 8(f) of the NLRA, and that a declaration regarding Resco's obligations under that agreement as it pertains to its Ghent employees is appropriate because: (1) Section 9(a) of the NLRA requires that a majority of employees in a bargaining unit demonstrate support for a labor union before that labor union is designated as being the exclusive representative of such employees; (2) Congress provided a limited exception to Section 9(a)'s majority-support requirement, which applies only to employers engaged primarily in the building and construction industry; and (3) Resco is not engaged primarily in the building and construction industry as its vessel-relining services is only incidental to its principal pursuit of manufacturing refractory products.  (Docket No. 30 at 2).  Therefore, Resco contends, the NRA can only be

---

[4]      Furthermore, the administrative decision to which the Union refers was not made by the NLRB nor was any NLRB decision issued in that matter.  Rather, the prosecutorial arm of the NLRB simply decided in its sole discretion not to pursue the charges that Resco had filed.  (Docket No. 36-1 at 23-24).

considered a Section 9(a) agreement covering employees who have demonstrated majority support for the Union's representation and, since its Ghent employees have never manifested support for the Union, the NRA does not cover those employees and Resco is entitled to its requested declaration from the Court.  (Id.).

The Union, on the other hand, contends that the Court should not be drawn into the parties' dispute, which it claims should be resolved through the grievance and arbitration process provided by the NRA which, it claims, *does* cover Resco's Ghent employees.  More specifically, the Union argues that the NRA does cover Resco's Ghent employees because Section 8(f) applies to Resco which *is* engaged primarily in the building and construction industry – at least at the Ghent facility. Although, as discussed, supra, the Union urges the Court to decline to exercise its discretionary jurisdiction over this matter. The Union also asserts that, if the Court does exercise its discretionary jurisdiction here, it should find that Resco is not entitled to the declaratory and other relief that it seeks.  Moreover, the Union's  Counterclaim, although not specifically asking for relief under the DJA, does request a "judgment declaring" that Resco breached the NRA by failing to submit to the grievance and arbitration procedure set forth in that agreement, an order compelling Resco to submit the grievance involving its Ghent employees to arbitration under the NRA, and an award of costs and attorney fees incurred in defending itself against the Complaint and in prosecuting its Counterclaim.  (Docket No. 21 at 17-18, "Wherefore" clause).

Upon consideration of the issues presented, the Court notes, first, that questions of arbitrability are appropriate for the courts to decide.  See Opalinski v. Robert Half Int'l Inc., 761 F.3d 326, 335 (3d Cir. 2014).  Although the Union urges the Court to order Resco to submit to arbitration of the dispute under the NRA, noting the strong federal policy in favor of resolving disputes through arbitration, the issue before the Court is whether the NRA applies to the parties

in the first place such that the dispute falls under that agreement and should be submitted to arbitration, *i.e.,* whether there is an arbitrable dispute here.  That issue of arbitrability is properly before the Court.

The main issue before the Court is whether Resco is an employer "engaged primarily in the building and construction industry" as set forth in Section 8(f) of the NLRA, 29 U.S.C. § 158(f), such that the NRA would constitute a valid pre-hire agreement that is applicable to its employees who perform vessel-relining work at NAS's Ghent facility.  (Docket Nos. 30 at 12; 35 at 8).

Section 8(f) provides an exception to the general rule that an employer who signs a collective bargaining agreement with a union which does not represent a majority of the employer's present workforce commits an unfair labor practice and that such an agreement is void and unenforceable.  See NLRB v. Local Union No. 103, Int'l Ass'n of Bridge Workers (Higdon Constr. Co.), 434 U.S. 335, 344-45, 351-52 (1978).  The statutory text of Section 8(f) expressly provides:

> It shall not be unfair labor practice . . . for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members . . . because . . . the majority status of such labor organization has not been established . . . .

29 U.S.C. § 158(f).  Accordingly, the following three prerequisites must exist for an agreement to constitute a valid and enforceable pre-hire agreement pursuant to Section 8(f):  first, it must cover employees who are engaged in the building and construction industry; second, it must be with a

labor organization of which building and construction employees are members; and third, it must be with an employer engaged primarily in the building and construction industry.

Here, it is evident that the Union's members perform building and construction work.  And, while the parties seemingly dispute whether Resco's Ghent employees have been engaged in building and construction work, for purposes of deciding Resco's motion, the Court shall construe the factual record in the light most favorable to the Union and thus consider the vessel-relining services performed by Resco's Ghent employees to qualify as building and construction work. Accordingly, the issue of whether Resco is an employer "engaged primarily in the building and construction industry" is the only remaining issue to be resolved here.

According to the United States Supreme Court, "in interpreting a statute a court should always turn first to one, cardinal canon before all others," the plain meaning of the language of the statute.  Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  The plain language and the ordinary meanings of words in a statute are the starting point in construing meaning "and will be determinative unless there is an apparent ambiguity or expression of legislative intent to the contrary."  Gaibis v. Werner Continental, Inc., 565 F. Supp. 1538, 1548 (W.D. Pa. 1983) (citing Bread Political Action Committee v. FEC, 455 U.S. 577, 580 (1982)), vacated on other grounds, Vosch v. Werner Continental, Inc., 734 F.2d 149 (3d Cir. 1984).

Examining the plain language of the statute here necessitates discerning the meaning of the word "primarily" in order to determine whether Resco is an "employer engaged primarily in the building and construction industry."  The word "primarily" is clear and unambiguous[5] and is

---

[5]    Resco proffers a portion of the legislative history of Section 8(f) to show that when Congress used the word "primarily," it intended that Section 8(f) apply only to those employers engaged in building and construction work "as

generally understood to mean "for the most part," "chiefly," or "mostly."   See https: //www.merriam-webster.com/dictionary/primarily (last visited March 25, 2021).

Although the parties seemingly do not disagree as to the plain meaning of Section 8(f), they admittedly disagree as to the criteria the Court should consider when applying it to the evidentiary record here for the purpose of determining whether Resco is "engaged primarily in the building and construction industry."   In other words, how should the Court quantify Resco's building and construction work to determine whether it is engaged primarily (*i.e.*, chiefly or mostly) in building and construction or whether it is engaged primarily (again, chiefly or mostly) in manufacturing?

In presenting their arguments, the parties concede that the NLRB and courts have not previously fashioned a clear and consistent standard to be used in determining what it means to be engaged *primarily* in the building and construction industry.  (Tr. at 15, 23, 26).  Therefore, both parties rely on a relatively small number of decisions by federal courts and the NLRB that address this issue – all of which are extremely fact-specific – but which, when considered together, provide the Court with some guidance in making its determination here.

_____

an integral and important part of their regular operations rather than to those with whom such undertakings are only incidental to their principal pursuit."  (Docket No. 28-1 at 9, Senate Rep. No. 82-1509, at 8 (1952)).  See also Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co., 746 F.2d 557, 563 (9th Cir. 1984); NLRB v. W.L. Rives Co., 328 F.2d 464, 469 (5th Cir. 1964).  Resco's reference to this Senate Committee Report also suggests that manufacturers who also engage in extensive construction activity could be covered by Section 8(f), but only if they used nonregular employees on an intermittent, short-term basis.  (Docket No. 30 at 10-11.)  However, because the plain text of Section 8(f) at issue in this case is clear and unambiguous, the Court need not consult the legislative history.  See, e.g., Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999) ("As in any case of statutory construction, our analysis begins with the language of the statute.  And where the statutory language provides a clear answer, it ends there as well." (internal quotations and citations omitted)); Conn. Nat'l. Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."); In re Visteon Corp., 612 F.3d 210, 219-220 (3d Cir. 2010) ("It is for Congress, not the courts, to enact legislation.  When courts disregard the language Congress has used in an unambiguous statute, they amend or repeal that which Congress enacted into law.  Such a failure to defer to the clearly expressed statutory language of Congress runs contrary to the bedrock principles of our democratic society.").

Resco argues that Section 8(f) is a statutory exception that should be interpreted narrowly, and that its building and construction work should be measured in proportion to its business as an entire enterprise.  See Pekowski Enters., Inc., 327 NLRB 413, 428 (1999) ("It is also a familiar canon that a statutory provision, which, like Section 8(f) creates an exception to the general scheme of a statute, will be strictly construed.").  Resco also asserts that Section 8(f) requires that an employer's participation in the building or construction process be more than minimal or insubstantial in order for it to be considered "engaged primarily" in that process.  See e.g., Union Asphalts & Roadoils, Inc. v. MO-KAN Teamsters Pension Fund, 857 F.2d 1230, 1234-35 (8th Cir. 1988) (summarizing how Section 8(f) has been applied in various frequently cited cases).

In further support of its position, Resco asserts that its "business model" is most analogous to the employer in Frick Co., 141 NLRB 1204 (1963).  In that case, the NLRB considered whether the employer, a manufacturer of refrigerators that also provided installation services, was engaged primarily in building and construction.  See id.  The NLRB noted that less than 1% of the employer's revenue came from such installation services, and it held that, if total gross income from building and construction work is the proper measure of that work, then the employer in Frick was clearly not engaged primarily in such work.  See id. at 1208.  The NLRB further found that, given the obvious preponderance of the employer's manufacturing operations in that case – whatever the applicable criterion – it could not be found to be engaged primarily in building and construction work.  See id.  Moreover, Resco notes that Frick involved installation work in a building under construction (unlike Resco, which does no work at construction sites), but the employer was still found to be not engaged primarily in the building and construction industry when examining its operations "as a whole."  Id.

20

In further support of its argument, Resco cites to <u>Pekowski Enters., Inc.</u>, 327 NLRB at 413, in which an employer, whose business involved setting up and fabricating exhibits for trade shows and conventions, was found to be not engaged primarily in the building and construction industry. The NLRB found in <u>Pekowski</u> that, while the employer's workers did considerable construction work, such work was "incidental" to the employer's mission of producing trade shows.  <u>See id.</u> at 428-29.  Resco also cites to <u>Cent. Ariz. Dist. Council of Carpenters (Wood Surgeons, Inc.)</u>, 175 NLRB 390 (1969), in which an employer manufactured, sold and delivered cabinets.  The employer in that case guaranteed that costs of installation would not exceed a certain amount, and its employees may have done a certain amount of installation work, but the NLRB found that those employees were not primarily construction workers.  <u>See id.</u> at 391-92.  In so finding, the Board noted that the cost of installation was only a fraction of total receipts from the employer's sale, delivery, and installation contracts, and was an even lesser fraction of revenues from the sale of all of its products.  <u>See id.</u>

Resco argues that it is most similar to the employer in <u>Frick</u> since less than 5% of its revenue comes from its vessel-relining and ceramic-welding services, less than 5% of its man hours are attributable to such work, and less than 1% of its customers purchase such services from it.  (Resco's SMF, ¶¶ 20, 21; McDonough Supp. Dec., ¶¶ 6, 7).  Therefore, Resco concludes that, like the employer in <u>Frick</u>, its services are merely incidental to its manufacturing endeavors and its involvement in the construction process is only minimal, so the Court should find that the vessel-relining work performed by its Ghent employees is not covered by the NRA because that modicum of building and construction work is not enough to establish  Resco as being engaged primarily (*i.e.*, "most" or "chiefly") in the building and construction industry as required by Section 8(f).

The Union argues, however, that the Court should apply Section 8(f) by quantifying Resco's vessel-relining services solely in relation to its manufacturing work at Resco's Ghent facility alone rather than considering it in relation to its business as a whole.  In support of its argument, the Union asserts that this case is most analogous to Zidell Explorations, Inc., 175 NLRB 887 (1969), in which the employer at issue purchased a missile site from the United States Department of Defense with the intention of dismantling it.  The employer in Zidell was primarily engaged in the business of dismantling ships and barges (generally considered to be part of the shipbuilding industry), but in that instance, the employer had engaged workers to dismantle the missile site.  See id. at 889.  Although the NLRB concluded that the shipbuilding industry is not part of the building and construction industry as those terms are used in Section 8(f), it also found that the employer's entirely separate operation of dismantling the missile site was consonant with Congress's intentions and objectives under that statute.  See id.  In so finding, the NLRB looked not at the employer's revenue, but at the fact that the employer "frequently engaged in transitory on-site operations in the construction industry similar to those performed at the missile sites and . . . employed the skilled craftsmen and operators normally associated with the building and construction industry required to accomplish its objectives."  Id.

The Union contends that the Eleventh Circuit adopted the Board's reasoning in Zidell, and that it applied similar reasoning in a case that is factually analogous to the present case, A.L. Adams Constr. Co. v. Georgia Power Co., 733 F.2d 853 (11th Cir. 1984).  A.L. Adams involved significant construction work by a power company at a nuclear power plant.  See id.  The Union points out that the court in A.L. Adams held that, although the major portion of the employer's business involved the production and sale of electricity, it could still "seek the protection of § 8(f)"

and could "take advantage of § 8(f) if it is sufficiently engaged in construction work at one site." Id. at 857.

Additionally, the Union argues that the holding of Zidell has been followed in other decisions, citing Hoover, Inc., 240 NLRB 593 (1979).  In Hoover, the NLRB found that an employer was not engaged primarily in the building and construction industry where it operated sand and gravel quarries and delivered material to construction sites, but did no work at the sites. See id. at 599.  The Union also points to Constr., Bldg., Materials & Misc. Drivers, Local 83, in which the Board stated that if an employer routinely engages in construction, the determination of whether it is engaged primarily in construction is made "without regard to whether the greater amount of revenue comes from the labor or from the materials," to argue that comparison of revenues is not an appropriate way to determine whether Section 8(f) applies to an employer.  243 NLRB 328, 331 (1979).

The Court finds, however, that upon careful consideration of the underlying facts of the various cases cited by the parties, the cases cited by the Union are not the most analogous to the factual record presented here.  Additionally, because the cases are all very fact-specific, consideration of distinguishing factors among them is critical in determining how relevant the holdings in those cases are to the case pending before the Court.

For example, in Zidell, the NLRB emphasized that the employer commonly dismantled ships, factories and other structures to salvage materials which it then used for construction purposes, and it contrasted the facts there with Frick where the employer was a manufacturer that only "incidentally" installed its products.  See 175 NLRB at 889 n.7.  The NLRB further noted in Zidell that the employer, although primarily involved in the business of dismantling ships and barges, had frequently engaged in transitory construction activities like those at the missile site,

had *built factories and warehouses,* and had even *erected a complete plant*.  See id. at 889.  Here, in contrast, Resco is not alleged to be involved in transitory building or construction projects like the employer in Zidell, and its service work has been performed at steel-manufacturing plants and on coke ovens but not at traditional construction sites.  (Resco's SMF, ¶¶ 13, 14; McDonough Dec., ¶¶ 13, 14, 16, 17).

Also, while A.L. Adams appears to support the Union's argument that Resco's work at the Ghent site alone is sufficient to establish that it is engaged primarily in the building and construction industry, even if Resco is largely involved in manufacturing, upon closer scrutiny, the employer in A.L. Adams appears to have operated as a general contractor for a significant amount of construction work at the nuclear project site at issue, including for *the erection of an administration building* and in an *initial hiring of 150 craftsmen at the site*.  See 733 F.2d at 854. Whereas, there are no allegations that Resco has ever operated as a general contractor, its vessel-relining work accounted for only 11% of its revenue at the Ghent facility at issue in this case, and the services provided at Ghent involve only 22 Resco employees.  (Resco's SMF, ¶¶ 36, 38; McDonough Dec., ¶ 29; McDonough Supp. Dec., ¶ 9;)  Since A.L. Adams and the present case involve vastly different factual scenarios, the holding of A.L. Adams – an antitrust case which states that an employer "may take advantage of § 8(f) if it is sufficiently engaged in construction work at one site," and which found the employer's significant involvement in construction to be sufficient – is not determinative in this case.  733 F.2d at 857.

Similarly, Hoover, 240 NLRB at 593, and Local 83, 243 NLRB at 328, are also not necessarily supportive of the Union's position.  While certain dicta from Local 83 appears to be helpful to the Union here, the Board in that case ruled that the Section 8(f) exception did not apply to the employer, citing to cases that are readily distinguishable from the present case, including

Zidell, discussed supra, and Carpet, Linoleum and Soft Tile Local Union No. 1247 (Indio Paint and Rug Center), 156 NLRB 951 (1966).  See 243 NLRB at 331.  In Indio, the Board considered how to evaluate various types of business enterprises and noted that where a "firm's gross revenue sources happen to provide the single persuasive touchstone with respect to Section 8(f) questions," statutory determinations should be based upon the portion of the firm's gross revenue which regularly derives from contract construction, without regard to whether it came from labor alone or from labor and materials combined.  156 NLRB at 960.  However, the Board also explained that when business enterprises devote "their facilities, time, effort, and funds principally to contract construction, whether as general building contractors, heavy construction contractors, or special trade contractors," they should be considered to be engaged primarily in building and construction work.  Id.  The Board further advised that gross revenue should not be the only factor considered, but that:

> wherever relevant, triers of fact should consider the proportion of their physical plant and mobile equipment devoted to servicing or performing such work, the percentage of their total personnel directly concerned with such work, the relative degree to which their personnel devote productive time to such work, *as well as* the proportion of their "total gross income" derived therefrom.

Id. (emphasis in original).  So, in another highly fact-specific determination, the Board in Indio ultimately found that the employer was engaged primarily in building and construction (involving the sale and installation of floor coverings, drapes and counters) where approximately 93% of its overall sales included installation, approximately 62% of its work was for general contractors for residential and commercial construction, and 12 of the company's 15 employees were installers.  See id. at 954.  The employer at issue in Indio is thus altogether different from Resco, which has very little vessel-lining tied to its sales and which performs no work for general contractors.

(McDonough Supp. Dec., ¶¶ 6, 7).  Notably, the Board in <u>Indio</u> also considered the employer's gross revenue rather than its revenue from a particular installation worksite in making its decision.

 <u>Hoover</u>, too, is distinguishable from the present case.  <u>See</u> 240 NLRB at 593.  The Union cites to <u>Hoover</u> in support of its argument that the Court should look at Ghent alone in determining whether Section 8(f) applies to Resco, indicating that the Board noted there that at "other locations of this employer, it was clearly engaged in construction . . . *and that at those sites was admittedly primarily engaged in construction and at those locations could effectuate 8(f) agreements*." (Docket No. 35 at 9-10 (citing <u>Hoover</u>, 240 NLRB at 599 n.17 (emphasis added by the Union in its brief))).  In the footnote in <u>Hoover</u> to which the Union cites, however, the Board appears to have been referring to an employer in another case who had made an argument similar to that made by the employer in <u>Hoover</u>.  In that case, <u>Forest City/Dillon-Tecon Pacific</u>, 209 NLRB 867 (1974), the employer was engaged in the planning and construction of buildings across the United States, and the issue there was whether the employer could make a Section 8(f) agreement involving workers at its precast concrete plant since its entire operations were allegedly part of the building and construction industry (the Board ruled that it could not).  The facts of <u>Forest City</u> are thus nearly opposite to the situation here:  in <u>Forest City</u>, the employer argued that it was engaged primarily in the building and construction industry overall, and it wanted the Board to find that it could enter into a Section 8(f) agreement with its employees at one of its manufacturing facilities; whereas here, Resco argues that it is not engaged primarily in the building and construction industry, and it asks the Court to find that it could not enter into a Section 8(f) agreement covering its employees at Ghent.

 Therefore, if the Court evaluates Resco's engagement in building and construction work on a company-wide basis, as Resco urges, the Court cannot conclude that it is "engaged primarily

in the building and construction industry" under Section 8(f).  As explained, supra, the vast majority of Resco's revenue stems from sales of its refractory products, while its service work accounts for a very small portion (less than 5%) of its revenue.  (Resco SMF, ¶ 20; McDonough Dec., ¶ 20).  See Frick, 141 NLRB at 1204 (in which the employer's services accounted for less than 1% of its overall revenue).  Likewise, since 2015, Resco's vessel-relining and ceramic-welding work has never exceeded 4.9% of its annual man hours.  (Resco's SMF, ¶ 21; McDonough Dec., ¶ 21).  Additionally, Resco never provides vessel-relining services alone; rather, it only performs such services for customers who make it a "significant supplier" of their refractory products.  (Resco's SMF, ¶¶ 15-17; McDonough Dec., ¶¶ 15-17).  Thus, none of Resco's customers purchase its vessel-relining services without also purchasing its refractory products, and only an extremely small number of its customers purchase such services at all.  (Resco's SMF, ¶ 16; McDonough Dec., ¶ 16; McDonough Supp. Dec., ¶¶ 6, 7).  Compare Indio, 156 NLRB at 951 (in which 93% of the employer's sales included installation services).  As explained, supra, in 2019 only five of Resco's 1,368 customers (0.37%) purchased vessel-relining or ceramic-welding services, while in 2018 the same five of Resco's then 809 customers (0.62%) purchased such services.  (McDonough Supp. Dec., ¶¶ 6, 7).  In light of these facts, the Court cannot find that Resco owes obligations to the Union or to any other party under the NRA as it pertains to the Ghent employees because Resco is not "engaged primarily in the building and construction industry" in accordance with Section 8(f).

Even if the Court were to focus its evaluation of Resco's operations on its Ghent facility specifically and without regard to its company-wide operations, as the Union seemingly suggests, the Court still could not find that Resco is an employer "engaged primarily in the building and construction industry."  As discussed, supra, Resco and NAS entered into an agreement to provide

refractory materials and vessel-relining services at the Ghent facility in 2014, and that work has continued until the present time.  (Resco's SMF, ¶¶ 34, 36; McDonough Dec., ¶¶ 25, 28).  There are currently 22 Resco employees performing vessel-relining services at Ghent, 6 of whom have been there for longer than six years and 18 of whom have been there longer than two years.  (Resco's SMF, ¶ 38; McDonough Dec., ¶ 29).  Such work does not, therefore, appear to be transitory construction work.  Compare Zidell, 175 NLRB at 889.  Resco's vessel-relining work at Ghent is also not an entirely separate enterprise from the company's usual operations of manufacturing refractory, nor does Resco commonly engage in the type of construction activities that the employer did in Zidell.  See id.; A.L. Adams, 733 F.2d at 857.  Additionally, while Resco only provides vessel-relining services for a tiny percentage of its customers (0.37% in 2019), even where it did provide such services in Ghent, the revenue stemming from those services still amounts to only a small percentage of the total revenue Resco receives from that facility (11% in 2019).  (McDonough Supp. Dec., ¶¶ 6, 7, 9).  Compare Indio, 156 NLRB at 951 (in which 93% of the employer's sales included installation services and 62% of its sales were to general contractors in the construction industry).

Despite the stark differences between the facts of this case and the facts of the various cases cited by the parties, the Union summarized its position during oral argument, contending that, as the employer in A.L. Adams "had a substantial interest in an enterprise that was a building and construction-related enterprise," therefore "all that need be done under 8(f) [is] that there is something substantial that clearly falls within work done by the building trades, and that would apply here in the vessel relining."  (Tr. at 30).  However, as discussed at length, supra, upon consideration of the cases that the Union cited to support its position both in briefing and during oral argument, as well as the cases cited by Resco in support of its position, the Court finds that

there is simply no support for a finding that the vessel-relining services Resco's employees performed at Ghent – or Resco's performance of services company-wide – are substantial enough to show that it is an employer engaged primarily in the building and conducting industry under Section 8(f).  Compare A.L. Adams, 733 F.2d at 853 (in which the employer, although engaged primarily in non-construction activities elsewhere, was noted to be able to take advantage of Section 8(f) at one location where it operated as a general contractor for major construction work and hired numerous employees); Zidell, 175 NLRB at 887 (in which the employer, although primarily involved in non-construction activities, had also clearly engaged in major construction work elsewhere including the construction of various buildings).

Therefore, upon consideration of the record evidence of this case in light of the plain language of Section 8(f), and the cases that the parties have cited, the Court finds that Resco is not engaged primarily in the building and construction industry and therefore owes no obligations to the Union or to any other party under the NRA as it pertains to Resco's employees at Ghent.  The Court will therefore not compel Resco to arbitrate the Union's grievance relating to Resco's Ghent employees.  The Court further finds that Resco's failure to comply with the grievance and arbitration procedure set forth in the NRA does not constitute a breach of that agreement because the NRA cannot apply to Resco's Ghent employees as a matter of law.

Accordingly, summary judgment will be granted in favor of Resco as to Count I of the Complaint and as to the Union's Counterclaim.  The Court will declare that Resco owes no obligations to the Union or any other party under the National Agreement for Refractory Construction as it pertains to Resco's employees at North American Stainless in Ghent, Kentucky. (See Resco's Proposed Order, Docket No. 32).

### 3.  Count II of the Complaint (Section 303 of the LMRA)

Resco alleges in Count II of the Complaint that the Union's actions constitute violations of Sections 8(b)(1), 8(b)(4)(ii)(A), 8(d), 8(e) and 9(a) of the NLRA, and that the Union has thereby engaged in conduct defined as unfair labor practices under Section 303(a) of the LMRA, 29 U.S.C. § 187(a).  Resco therefore seeks damages in accordance with Section 303(b) of the LMRA, 29 U.S.C. § 187(b).  Although Resco asks that the Court grant summary judgment in its favor on all claims in this matter, Count II of the Complaint is not addressed in Resco's motion or in its proposed order, nor did the parties discuss it in their briefing or during oral argument.  Therefore, Resco's motion for summary judgment in its favor as to Count II must be denied.

Nevertheless, based on the parties' filings in this matter, the Court's ruling today on Count I of the Complaint and the Union's Counterclaim – including the Court's adoption of the language of Resco's Proposed Order – appears to resolve this case.  Therefore, the Court will provide the parties with an opportunity to advise the Court as to whether anything remains to be resolved in this matter.  Accordingly, the Court will order counsel for Resco and the Union to meet and confer in order to discuss whether the case has been resolved.  The parties shall then file a joint statement indicating either that this matter has been resolved, in which case the Court will enter a Rule 58 Judgment; or, alternatively, the parties shall file a joint statement indicating that this matter has not been resolved, in which case the Court will schedule a status conference to discuss how this case may best, and most efficiently and cost-effectively, proceed to final resolution.

V.     <u>**Conclusion**</u>

Based on the foregoing, Resco's Motion for Summary Judgment is granted in part and denied in part.  Summary judgment is granted in favor of Resco as to Count I of the Complaint and as to the Union's Counterclaim, and the Court will enter an Order declaring that Resco owes no obligations to the Union or to any other party under the NRA as it pertains to Resco's Ghent employees, as set forth in detail in the accompanying Order.  As to Count II of the Complaint, Resco's motion for summary judgment is denied, and the Court will order counsel for the parties to meet and confer and file a joint statement advising the Court as to whether the Court's ruling today resolves this case, as set forth in detail in the accompanying Order.

An Order consistent with this Memorandum Opinion follows.


Dated: March 30, 2021                          *s/ W. Scott Hardy*_____
                                               W. Scott Hardy
                                               United States District Judge


cc/ecf:  All counsel of record